UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

08 CV 61314 - PCH

John Shandorf, Jeffrey Shandorf, Vincent Dimino, Lauren Horwitz, Anthony Brasco, Gregory Caruso, Robert Valenti, Leslie Tree Marr, Robert Caputo, Teresa Caputo and Richard Loeb, aka The Shandorf Group,

Plaintiffs,

FILED BY ____ D.C.
2008 OCT 14 PM 2:51
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. L.

Vs.

MCZ/Centrum Florida XIX, LLC, a Delaware limited liability Company, its successors and/or assigns,
MCZ/Centrum Florida III Owner, LLC ,
MCZ/Centrum Florida XVIII, LLC, Felberbaum and Associates, P.A.
The Carlyle Group, Inc., MHI/Carlyle Sian Owner 1, L.L.C., MHI Hotels, L.L.C., MHI Hotels Services, L.L.C., MHI Hospitality TRS, LLC, Resource Title Company, and MHI Hollywood, LLC, and Fortune Development And Sales.

Defendants.

______________________________/

**AMENDED COMPLAINT**

Plaintiffs are acting as a group, through their group leader, John Shandorf, and are proceeding in this matter on a pro-se basis.

1. This court has jurisdiction over this proceeding per 28 U.S.C. section 1146(a)-(b), as the parties are residents of different states and the civil action in which the matter in controversy exceeds $75,000, exclusive of interest and costs.

2. The Plaintiffs, known as the Shandorf Group are comprised of 11 individuals, 9 are domiciled in the state of NY, 1 in Minnesota and 1 in Florida. The defendants are comprised of several corporations, most of which are based in South Florida and the cause of action arose in Dade and Broward Counties.

3. The Shandorf group, executed Purchase Agreements with MCZ Centrum, on Sian Resort Residences/Condominium "Sian", a condominium hotel resort in Hollywood, Florida. The following are the unit numbers, names of contract holders, and amount being held in deposit:

| | |
|---|---|
| Unit 316, John Shandorf & Jeffrey Shandorf | $22,490.00 |
| Unit 716, John Shandorf & Jeffrey Shandorf | $26,990.00 |
| Unit 416, Vincent Dimino | $23,490.00 |
| Unit 616, Lauren Horwitz | $25,490.00 |
| Unit 418, Anthony Brasco & Gregory Caruso | $24,490.00 |
| Unit 622, Robert Valenti | $25,490.00 |
| Unit 833, Leslie Tree Mar | $27,990.00 |
| Unit 218, Robert Caputo & Richard Loeb | $25,490.00 |
| Unit 219, Robert Caputo & Richard Loeb | $25,490.00 |
| Unit 619, Robert Caputo & Richard Loeb | $26,490.00 |
| Unit 215, Teresa Caputo | $25,490.00 |
| TOTAL ESCROW DEPOSITS: | **$256,900.00** |
| | |

4. The Shandorf group was prepared to close on their individual units, as instructed by several letters by the MCZ and their attorneys, in May of 2007. In June of 2007, several members of the Shandorf Group were contacted by Fortune Development and Sales and told that the MCZ the Developer was going to allow us to transfer our deposits to another of their projects, namely the Flamingo in South Beach because MCZ felt that no one was going to be able to get mortgages on the Sian project. The Shandorf group felt something was amiss and started to inquire with the project, the developer, the Crowne Plaza Hotel, the hotel staff, the Fortune Sales employees and Felberbaum and Associates. The Shandorf Group was all told the same story that if they wanted any information they would have to contact Michael Sadov, the director of Sales for Fortune Development and Sales. Repeatedly the Shandorf Group was told by Mr. Sadov that they would be able to transfer the deposits to another project, but they needed to act within a deadline, never being told the truth that the project was sold and that the deposits would be returned.

5. The Shandorf Group finally made contact with the original sales and marketing firm and were told that they think the entire project had been sold to the Hotel directly. Soon thereafter, a simple search of Google showed that in early June of 2007, a press release was issued by MCZ Centrum stating that they were selling the condo hotel project to The Carlyle Group and to MHI hospitality for 78 million dollars and that MCZ was extinguishing the condominium portion of the project, thereby cancelling all purchase agreements unilaterally.

6. It became apparent that all of the defendants were acting together to try and hide the fact that the project was being sold because they did not want the contract holders to make any problems before the sale could be completed to the Carlyle Group and MCI hospitality. Additionally, MCZ was trying to persuade Sian contract holders to move their deposits to their other projects by misleading them as to why there were doing it and not telling them that they would be eligible to have their deposits returned should the hotel be sold.

7. Finally, MCZ and the rest of the defendants had to officially give notice to the contract holders and the Shandorf group that the project was no longer going to be a condo-hotel. MCZ instructed Felberbaum and Associates to write a fraudulent letter claiming the project could not be completed because of bank funding problems and that the deposits would be returned, only if the contract holders signed a release, releasing MCZ of all future claims. The absurdity of this is that they gave a two week window to ask for your deposit back, but completed the final sale of the hotel to the Carlyle Group several days before their own deadline to the contract holders. Additionally, The Shandorf Group already had their "walk through" of their units and saw the completed project, plus were hounded about getting ready for closings, but still in August of 2007, Felberbaum and MCZ wrote a deceptive letter stating that the project could not be completed while all along and 3 months prior they issued a press release stating the project had been sold and they voluntarily extinguished the condominium portion of the project.

8. The Shandorf Group called Felberbaum and associates and asked why they would write such a deceptive letter, since months before they were being hounded to be ready to close as the project was completed and then 3 months later are told in the fraudulent letter that the project is not completed, all the while knowing it was sold. Felberbaum employees did not have any explanation.

9. The Shandorf Group maintains they are ready, willing and able to close on their respective units. The purchase agreements remain valid and enforceable and expect MCZ to honor the agreement. MCZ intentionally took away the Shandorf Group's opportunity to perform and in doing so breached the agreements.

10. MCZ used the deposits by the Shandorf Group to obtain and finance the construction of the condo-hotel, intentionally breached the agreements and without notice sold the completed project to the Carlyle Group, et al for millions of dollars, while simultaneously directing it marketing agent to conceal the hotel purchase and sale from the contract holders.

11. The Shandorf Group consists of very savvy and sophisticated investors who were looking to invest in the condo-hotel project for significant return on their investments and long term appreciation in conjunction with the hotel management's rental program which would market the units worldwide through the Crowne Plaza Hotel Chain.

12. The Carlyle Group and MHI Hospitality, knew the condo hotel project was successful and ready for completion as they were actively marketing the hotel rental program to all contract holders of the project. They participated in concert with MCZ to intentionally and willfully breach the agreements by buying the project as a hotel. They had full knowledge that there were 250 plus contracts out on the project for the past two years. MCZ did not have the unilateral right to terminate the agreements. Additionally, MCZ in concert with Felberbaum and associates, wrote a fraudulent letter to induce the Shandorf Group and other contract holders to take back their deposits based on misleading information. The contract clearly states that MCZ could only terminate the contracts if they did not pre-sell 50% of the project and if notice was given within 180 days of the contract date. Both tests fail as more than 75% were sold and the notice to terminate was given more than a year after the contract date. That is why they had to concoct a fraudulent story as to why the completed project could not be completed. MCZ was required to honor the agreements and establish the condominium.

13. The Shandorf Group believes that MCZ acted intentionally and to defraud, but also that MCZ and the Carlyle Group acted in concert with MCZ in a deceptive manner intended to deceive the Shandorf Group.

14. All defendants' intentional and fraudulent actions have deprived the Shandorf group of their deposits which are being unlawfully held, the investment opportunity was usurped and the opportunity to have their units appreciate has been taken, all while MCZ has used the deposits to finance the project and sell it to the highest bidder, the Carlyle Group and MHI hospitality.

15. The defendants acted in a conspiracy to willfully defraud and engaged in misrepresentation, interference with contractual relations, loss of income, loss of opportunity, illegal contraction, unfair trade practices, deceit and a variety of SEC violations. At a minimum the defendant's actions amount to civil claims of breach of contract, specific performance, interference with contract, fraud, civil RICO, deceptive and unfair trade practices and civil theft.

16. The Shandorf group asks the court to set aside the sale of the hotel or project from MCZ to the Carlyle Group and MHI as it was facilitated through fraud, and the other 200 plus contract holders be notified of the

truth, Specific Performance and the right to close on our respective units as the contracts were illegally terminated by fraud and misrepresentation, a share in the profits of the sale to the Carlyle Group and MHI as the project was completed only because of the contract holder's deposits and contracts facilitated the construction loans, lost profits on the appreciation of the units and the overall investment, lost profits on the day to day rental program that has been very successful with very high occupancy rates, interest on the deposits being held, combined with Punitive damages and Treble damages, and whatever additional relief the court deems proper. There are 11 units involved in this complaint, based on the above, the Shandorf Group is asking that each unit be awarded $300,000 plus interest on the deposit. Treble damages would put each unit up to $900,000, plus punitive damages, as the court or jury deems adequate, plus costs, expenses, legal fees any other expenditures in furtherance of this complaint.

August 14, 2008

Respectfully Submitted,

John Shandorf, pro se for the Shandorf Group
John.Shandorf@stanleycapital.com
152 E. 84th Street #5D
New York, NY 10028
917 572-7711

Jeffrey Shandorf

Vincent Dimino

Lauren Horwitz

Anthony Brasco

Gregory Caruso

Robert Valenti

Leslie Tree Marr

Richard Loeb

Robert Caputo

Teresa Caputo

## Certificate of Service

**I hereby certify** that a true and correct copy of the foregoing was served by Overnight mail to all parties or their counsel on the attached service list.

SERVICE LIST

1. MCZ/Centrum, counsel of record. Holland & Knight, LLP, 701 Brickell Avenue, Suite 3000, Miami, FL 33130. Attn. James Wing and Robert Watson.

2. Felberbaum and Associates, P.A., Attn. Rick Felberbaum, Esq. Felberbaum & Associates, P.A. and Resource Title Company, 399 S. Federal Highway Boca Raton, FL 33432. Telephone: (561) 391.8600 Fax: (561) 391.7010

3. The Carlyle Group, Attn. Legal Department, Philllips Point West Tower, 777 South Flagler Drive, West Palm Beach, FL 33401, 561 273-6020

4. MHI Hospitality Group, MHI Hollywood, LLC, 4801 Courthouse Street, Suite 201, Williamsburg, VA 23188, Attn. Julia F. Connolly, compliance officer. *Phone*: 757-229-5648
*Fax*: 757-564-8801

5. Fortune Development and Sales,

FELBERBAUM & ASSOCIATES, P.A.
ATTORNEYS AT LAW
399 SOUTH FEDERAL HIGHWAY
BOCA RATON, FLORIDA 33432
(561) 391-8600

FACSIMILE: (561) 391-7010

EMAIL:
INFO@CLOSINGSINFLORIDA.COM

WEBSITE:
CLOSINGSINFLORIDA.COM

August 2, 2007

**VIA FEDERAL EXPRESS**

Jeffrey Shandorf
1333 S. Smith Ave.
West St Paul, MN 55118

Re: Sian Resort Residences I Condominium Purchase Agreement by and between MCZ/Centrum Florida XIX, L.L.C., a Delaware limited liability company (the "Seller") and Jeffrey Shandorf (the "Purchaser") with respect to Unit 316.

Dear Jeffrey Shandorf :

We regret to inform you that despite the best efforts of the Seller and due to market conditions, Seller has not been able to satisfy the pre-sale requirements of its Lenders providing the financing for the Sian Resort Residences I Condominium Project (the "Project"). As a result, the Lenders are unwilling to allow the Seller to convert the Project to condominium as contemplated by the Purchase Agreement. Therefore, the Seller has no alternative but to cancel the Project and return all deposits.

In this regard, enclosed is a Termination Agreement (the "Termination Agreement") to be executed by you in the presence of a notary public and returned to the undersigned no later than August 15, 2007. Upon our receipt of the properly executed Termination Agreement, we will forward the deposit to you. Alternatively, you may drop off the properly executed Termination Agreement and pick up your check at our office.

Thank you for your cooperation.

Very truly yours,

Stacy St. Germain, Esq.

Encl.

# 4706233_v2

# TERMINATION AGREEMENT

THIS TERMINATION AGREEMENT is executed this __ day of August, 2007 by MCZ/CENTRUM FLORIDA XIX, L.L.C., a Delaware limited liability company ("Seller") and JEFFERY SHANDORF ("Buyer").

## RECITALS

A. Buyer and Seller entered into that Sian Resort Residences I Condominium Purchase Agreement (the "Purchase Agreement") for the purchase of Unit 316 (the "Unit) in the Sian Resort Residences I Condominium (the "Project").

B. Pursuant to the Purchase Agreement, Buyer made a deposit or deposits in the total amount of $22,490.00 (the "Deposit").

C. As a result of market conditions and the inability of Seller to meet its lender's pre-sale requirements, Seller is unable to complete the conversion of the Project to condominium as contemplated by the Purchase Agreement.

E. The parties have agreed to terminate the Purchase Agreement and confirm that from and after the execution of this Agreement, Seller and Buyer shall have no further liability under the Purchase Agreement.

NOW THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Buyer and Seller hereby agree as follows:

## AGREEMENT

69. Recitals. The Recitals to this Termination Agreement are true and correct and incorporated by reference.

70. Termination of Purchase Agreement. The Purchase Agreement is hereby terminated and Seller shall promptly return the Deposit to Buyer.

71. Release. Seller and Buyer on behalf of themselves and their members, managers, officers, directors, employees, agents, shareholders, owners and affiliates (collectively, the "Released Parties") hereby remise, release, acquit, satisfy, and forever discharge the Released Parties from all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, agreements, promises, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which the Seller, Buyer or any Released Parties ever had, now has, or which the Seller, Buyer or any Released Parties hereafter can, shall or may have, against the other, for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of these presents relating to or arising out of, directly or indirectly: (i) the Purchase Agreement, (ii) the termination of the Purchase Agreement, (iii) the Unit, or (iv) the Project.

72. Failure to Return Deposit. This Termination Agreement shall be of no force and effect if Seller fails to return the Deposit to Buyer.

[SIGNATURES APPEAR ON FOLLOWING PAGES]

IN WITNESS WHEREOF, we have hereunto set our hand and seal this __ day of _______, 2007.

**SELLER:**

MCZ/CENTRUM FLORIDA XIX, L.L.C,
a Delaware limited liability company

By: ________________________________
Name:______________________________
Title: ______________________________

**BUYER:**

By: ________________________________
Name:______________________________

STATE OF )
)
COUNTY OF )

The foregoing instrument was acknowledged before me this ________ day of _____________, 2007, by _______________, who is personally known to me or has produced __________________________ as identification.

Notary Public

Type, Print or Stamp Name
My Commission Expires:

# 4707437_v2