UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:08-CIV-61314-COHN/SELTZER

JOHN SHANDORF, JEFFERY SHANDORF,
VINCENT DIMINO, LAUREN HORWITZ,
ANTHONY BRASCO, GREGORY CARUSO,
ROBERT VALENTI, LESLIE TREE MARR,
ROBERT CAPUTO, TERESA CAPUTO and
RICHARD LOEB, all individually,

    Plaintiffs,
vs.

MCZ/CENTRUM FLORIDA XIX, LLC; MCZ/
CENTRUM FLORIDA III OWNER, LLC;
MCZ/CENTRUM FLORIDA XVIII, LLC;
FELBERBAUM & ASSOCIATES,P.A.; THE
CARLYLE GROUP, INC.; MHI/CARLYLE SIAN
OWNER 1, LLC; MHI HOTELS, LLC.; MHI
HOTELS SERVICES, LLC; MHI HOSPITALITY
TRS, LLC; RESOURCE TITLE COMPANY; MHI
HOLLYWOOD, LLC; and FORTUNE
DEVELOPMENT AND SALES,

    Defendants.
_____/

## THIRD AMENDED COMPLAINT

1. This court has jurisdiction over this proceeding per 28 U.S.C. section 1146(a)-(b), as the parties are residents of different states and the civil action in which the matter in controversy exceeds $75,000, exclusive of interest and costs.

2. The Plaintiffs, JEFFERY SHANDORF, VINCENT DIMINO, LAUREN HORWITZ, ANTHONY BRASCO, GREGORY CARUSO, ROBERT VALENTI, LESLIE TREE MARR, ROBERT CAPUTO, TERESA

CAPUTO and RICHARD LOEB hereinafter referred to as the 'CAPUTO GROUP' are comprised of 10 individuals, 8 are domiciled in the state of NY, 1 in Minnesota and 1 in Florida. The defendants are comprised of several corporations, most of which are based in South Florida and the cause of action arose in Dade and Broward Counties.

1. The 'Caputo Group' executed Purchase Agreements with MCZ Centrum (hereinafter "MCZ"), on Sian Resort Residences/Condominium (hereinafter "Sian"), a condominium hotel resort in Hollywood, Florida. The following are the unit numbers, names of individual members of the 'Caputo Group' (contract holders), and amount being held in deposit:

| | |
|---|---|
| Unit 316, John Shandorf & Jeffrey Shandorf | $22,490.00 |
| Unit 716, John Shandorf & Jeffrey Shandorf | $26,990.00 |
| Unit 416, Vincent Dimino | $23,490.00 |
| Unit 616, Lauren Horwitz | $25,490.00 |
| Unit 418, Anthony Brasco & Gregory Caruso | $24,490.00 |
| Unit 622, Robert Valenti | $25,490.00 |
| Unit 833, Leslie Tree Mar | $27,990.00 |
| Unit 218, Robert Caputo & Richard Loeb | $25,490.00 |
| Unit 219, Robert Caputo & Richard Loeb | $25,490.00 |
| Unit 619, Robert Caputo & Richard Loeb | $26,490.00 |
| Unit 215, Teresa Caputo | $25,490.00 |

| TOTAL ESCROW DEPOSITS: | **$256,900.00** |
|---|---|
|  |  |

2. The 'Caputo Group' were prepared to close on their individual units, as instructed by several letters by the MCZ and their attorneys, in May of 2007. In June of 2007, the 'Caputo Group' were contacted by Fortune Development and Sales and told that the MCZ the Developer was going to allow them to transfer their deposits to another of their projects, namely the Flamingo in South Beach because MCZ felt that the 'Caputo Group' were not going to be able to get mortgages on the Sian project. The 'Caputo Group' felt something was amiss and started to inquire with the project, the developer, the Crowne Plaza Hotel, the hotel staff, the Fortune Sales employees and Felberbaum and Associates. The 'Caputo Group' was all told the same story that if they wanted any information they would have to contact Michael Sadov, the director of Sales for Fortune Development and Sales. Repeatedly the 'Caputo Group' was told by Mr. Sadov that they would be able to transfer the deposits to another project, but they needed to act within a deadline, never being told the truth that the project was sold and that the deposits would be returned.

3. The 'Caputo Group' finally made contact with the original sales and marketing firm and were told that they think the entire project had been sold to the Hotel directly. Soon thereafter, a simple search of Google showed that in early June of 2007, a press release was issued by MCZ

Centrum stating that they were selling the condo hotel project to The Carlyle Group and to MHI hospitality for 78 million dollars and that MCZ was extinguishing the condominium portion of the project, thereby cancelling all purchase agreements unilaterally.

4. It became apparent that all of the defendants were acting together to try and hide the fact that the project was being sold because they did not want the contract holders to make any problems before the sale could be completed to the Carlyle Group and MCI hospitality. Additionally, MCZ was trying to persuade Sian contract holders, including the 'Caputo Group' to move their deposits to their other projects by misleading them as to why there were doing it and not telling them that they would be eligible to have their deposits returned should the hotel be sold.

5. Finally, MCZ and the rest of the defendants had to officially give notice to the contract holders, including the 'Caputo Group' that the project was no longer going to be a condo-hotel. MCZ instructed Felberbaum and Associates to write a fraudulent letter claiming the project could not be completed because of bank funding problems and that the deposits would be returned, only if the contract holders signed a release, releasing MCZ of all future claims. The absurdity of this is that they gave a two week window to ask for your deposit back, but completed the final sale of the hotel to the Carlyle Group several days before their own deadline to the

contract holders. Additionally, the 'Caputo Group' already had their "walk through" of their units and saw the completed project, plus were hounded about getting ready for closings, but still in August of 2007, Felberbaum and MCZ wrote a deceptive letter to the 'Caputo Group', stating that the project could not be completed while all along and 3 months prior they issued a press release stating the project had been sold and they voluntarily extinguished the condominium portion of the project.

6. The 'Caputo Group' contacted Felberbaum and associates and asked why they would write such a deceptive letter, since months before they were being hounded to be ready to close as the project was completed and then 3 months later are told in the fraudulent letter that the project is not completed, all the while knowing it was sold. Felberbaum employees did not have any explanation.

7. The 'Caputo Group' maintains they are ready, willing and able to close on their respective units. The purchase agreements remain valid and enforceable and expect MCZ to honor the agreement. MCZ intentionally took away the 'Caputo Group's' opportunity to perform and in doing so breached the agreements.

8. MCZ used the deposits by the 'Caputo Group' to obtain and finance the construction of the condo-hotel, intentionally breached the agreements and

without notice sold the completed project to the Carlyle Group, et al for millions of dollars, while simultaneously directing it marketing agent to conceal the hotel purchase and sale from the 'Caputo Group' (contract holders).

9. The 'Caputo Group' consists of very savvy and sophisticated investors who were looking to invest in the condo-hotel project for significant return on their investments and long term appreciation in conjunction with the hotel management's rental program which would market the units worldwide through the Crowne Plaza Hotel Chain.

10. The Carlyle Group and MHI Hospitality knew the condo hotel project was successful and ready for completion as they were actively marketing the hotel rental program to all contract holders of the project. They participated in concert with MCZ to intentionally and willfully breach the agreements by buying the project as a hotel. They had full knowledge that there were 250 plus contracts out on the project for the past two years. MCZ did not have the unilateral right to terminate the agreements. Additionally, MCZ in concert with Felberbaum and associates, wrote a fraudulent letter to induce the 'Caputo Group' and other contract holders to take back their deposits based on fraudulent and misleading information. The contract clearly states that MCZ could only terminate the contracts if they did not pre-sell 50% of the project and if notice was

given within 180 days of the contract date. Both tests fail as more than 75% were sold and the notice to terminate was given more than a year after the contract date. That is why they had to concoct a fraudulent story as to why the completed project could not be completed. MCZ was required to honor the agreements and establish the condominium.

11. The 'Caputo Group' believes that MCZ acted intentionally and to defraud, but also that MCZ and the Carlyle Group acted in concert with MCZ in a deceptive manner intended to deceive the Plaintiffs.

12. All defendants' intentional and fraudulent actions have deprived the 'Caputo Group' of their deposits which are being unlawfully held, the investment opportunity was usurped and the opportunity to have their units appreciate has been taken, all while MCZ has used the deposits to finance the project and sell it to the highest bidder, the Carlyle Group and MHI hospitality.

13. The defendants acted in a conspiracy to willfully defraud and engaged in misrepresentation, interference with contractual relations, loss of income, loss of opportunity, illegal contraction, unfair trade practices, deceit and a variety of SEC violations. At a minimum the defendant's actions amount to civil claims of breach of contract, specific performance, interference

with contract, fraud, civil RICO, deceptive and unfair trade practices and civil theft.

WHEREFORE, the 'Caputo Group' respectfully request that the court to set aside the sale of the hotel or project from MCZ to the Carlyle Group and MHI as it was facilitated through fraud, and the other 200 plus contract holders be notified of the truth, Specific Performance and the right to close on their respective units as the contracts were illegally terminated by fraud and misrepresentation, a share in the profits of the sale to the Carlyle Group and MHI as the project was completed only because of the 'Caputo Group's' (contract holders) deposits and contracts facilitated the construction loans, lost profits on the appreciation of the units and the overall investment, lost profits on the day to day rental program that has been very successful with very high occupancy rates, interest on the deposits being held, combined with Punitive damages and Treble damages, and whatever additional relief the court deems proper. There are 11 units involved in this complaint, based on the above; the 'Caputo Group' asks that each unit be awarded $300,000 plus interest on the deposit. Treble damages would put each unit up to $900,000, plus punitive damages, as the court or jury deems adequate, plus costs, expenses, legal fees any other expenditures in furtherance of this complaint.

Respectfully submitted,

Patricia Cassells and Associates, P.A.
169 E. Flagler Street, Suite 1431
Miami, Florida 33131
Telephone: (305) 373-9672
Facsimile: (305) 373-9674

/s/ Patricia Cassells

                Patricia R. Cassells
                Fla. Bar No.: 984698

## CERTIFICATE OF SERVICE

 The undersigned hereby certifies that a copy was electronically filed with the Clerk of Courts by using the CM/ECF system and was furnished by U.S. mail this 30th day of December, 2008 to John Shandorf, 152 E. 84th Street, Apt 5D, New York, New York 10028.

                <u>/s/ Patricia Cassells</u>